METROPOLITAN DISTRICT COMMISSION *vs.* DEPARTMENT OF PUBLIC UTILITIES & another[1] (and three companion cases[2]).

Suffolk. December 6, 1966. — February 8, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Public Utilities. Evidence,* Presumptions and burden of proof. *Electricity.*

In a proceeding in the nature of a "complaint proceeding" before the Department of Public Utilities initiated by it "upon its own motion" at the request of a customer of an electric company, the burden was on the customer to show that with respect to the customer there should be an adjustment of an existing rate approved for general application. [24–25]

Contribution by a customer of an electric company of some of the apparatus used in street lighting entitled the customer to a reduction in the street lighting rate only in case of and on the basis of a saving to the company resulting from the contribution. [25–26]

The Department of Public Utilities has no power to order an electric company to make reparation to a customer of an overcharge collected by it. [26]

---

[1] Boston Edison Company.

[2] Metropolitan District Commission *vs.* Department of Public Utilities & Massachusetts Electric Company. Metropolitan District Commission *vs.* Department of Public Utilities & Cambridge Electric Light Company. Cambridge Electric Light Company *vs.* Department of Public Utilities & Metropolitan District Commission.

Whether past charges made by an electric company to a customer were made under an incorrect rate and so constituted overcharges was a question to be decided by the Department of Public Utilities.   [26–27]

Upon a determination by the Department of Public Utilities that a customer of an electric company has been overcharged by it, the customer may recover the overcharge in an action against the company, and need not join the department in such action.   [27–29]

In a suit under G. L. c. 25, § 5, for review of an order of the Department of Public Utilities, a decree remanding the matter to the department for further action by it was not appealable.   [30]

A suit under G. L. c. 25, § 5, for review of an order of the Department of Public Utilities must be dismissed where, following a remand to the department, it disposed of the matter by a final order and the petitioner did not seek a review thereof.   [30]

FOUR PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on February 26, 1964, May 4, 1964, January 29, 1965, and August 3, 1965.

The cases were reserved and reported by *Spalding, J.,* and *Spiegel, J.*

*Nathan S. Paven,* Special Assistant Attorney General, for the Metropolitan District Commission.

*Donald R. Grant* for Boston Edison Company.

*Philip H. R. Cahill* for Massachusetts Electric Company.

*Gerald May* for Cambridge Electric Light Company.

*Peter Roth,* Special Assistant Attorney General, for the Department of Public Utilities, submitted briefs.

SPIEGEL, J.   These are four petitions brought under G. L. c. 25, § 5, to review certain orders and decisions of the Department of Public Utilities (department).   The single justice reserved and reported these cases without decision. The cases involve rates charged by the electric companies to the Metropolitan District Commission (commission) for street lighting where the commission has furnished part of the equipment and the installation thereof which the electric companies normally furnish.

### THE BOSTON EDISON COMPANY CASE.

On November 29, 1962, the commission informed the department by letter of suits it had instituted for declaratory decrees and accountings against the Boston Edison Com-

pany (Edison) and the companies named in the companion cases, "to recover alleged overcharges for certain street lighting service." Those suits were eventually dismissed because the department was a necessary party under the declaratory judgments act (G. L. c. 231A, § 8) and had not been joined. *Commonwealth* v. *Massachusetts Elec. Co.* 347 Mass. 780. *Commonwealth* v. *Cambridge Elec. Light Co.* 347 Mass. 781. *Commonwealth* v. *Boston Edison Co.* 347 Mass. 781. The letter further stated, "Inasmuch as the provisions of law do not provide for an appeal or petition by the Commission, or any state agency, to the Department for review of any rates, I am calling this matter to your attention informally and requesting that the Department take jurisdiction for the establishment of prospective rates for such service under Sections 76 and 93 of Ch. 164, of the General Laws."

After informing Edison of this letter for its "information and comment" the department voted on January 16, 1963, "[t]o enter into an investigation by the Department upon its own motion and upon complaint into the propriety of the rates and charges by . . . [Edison] to the . . . [commission] for the company's supply of electricity for the lighting of streets, boulevards and reservations, under the care and control of the . . . [commission]," and a public hearing was scheduled. Hearings were held on several occasions, and on September 30, 1964, the department announced its decision, ordering Edison to file a new schedule of rates to provide a "reduction of $27.20 per year per lighting unit from its Class V rates where the customer has furnished, installed and maintained the lamppost and bracket."

The petition alleges error in the denial of certain of the commission's requests for rulings, and in the granting of certain requests for rulings by Edison, and further alleges that certain findings of the department are "based upon an error of law, unsupported by substantial evidence, and unwarranted by the facts contained in the record." These alleged errors relate to two aspects of the department's decision: first, its ruling that "on this record there is not

sufficient evidence that an allowance should be made on account of the ownership of the . . . [commission] of the underground plant''; second, its ruling that it ''can make no order concerning reparations.''

The department found the following relevant facts. ''The . . . [commission] has been, for many years, served under the Rate E of the Company [Edison] . . . . Under this rate . . . [Edison] supplies street lighting service on public streets to the various municipalities in which it operates . . . and to the Commonwealth through the . . . [department]. Rate E contains a table of charges which vary according to the type and size of lamp, and the date of installation. The general conditions of the rate provide in part, as follows:

'' 'Where the Company's standard street lighting units and apparatus . . . are used . . . and where the Company has existing facilities for supplying electricity on such streets, the Company will furnish, own and maintain all the necessary lighting units, poles, wires and such other apparatus and materials as are required. Where the customer has furnished or contributed toward the cost of a standard lamppost or non-line pole for a lighting unit installed prior to March 1, 1950 and continues to maintain it, rate classifications I or IV will apply; but at the request of the customer the Company will take over the ownership and maintenance of such lampposts or non-line poles and the appropriate rate classification for lamps installed on and after March 1, 1950 will apply thereto.

'' 'Where a non-standard lamppost, bracket or luminaire selected by the customer and accepted by the Company is installed at the request of the customer on and after March 1, 1950, the customer shall pay to the Company the excess installed cost of such lamppost . . . [and so forth] over and above the installed cost of standard equipment . . . .

'' 'Where underground service connections to either new or relocated lighting units are required, the customer shall do all the necessary paving for all lateral connections between the lamppost and the Company's mains in the streets, or shall pay to the Company its cost of such work.' ''

The commission installed and continues to own "substantial portions of the equipment associated with" 721 street lights. "These lights are supplied by underground cable and were installed at various times in places which did not then have facilities for supplying underground service. In addition, in many instances non-standard equipment was required by the . . . [commission]. The practice followed by the Company and the Commission was for the Commission to provide and install posts, the brackets, the underground duct (if required), direct burial cable (where used), and handholds and manholes. The Company supplied the luminaire, the fixture, ballast, photoelectric cell, the underground cable (other than direct burial), and connections thereto."

The department ruled that the allowance to the commission due to its ownership of the lampposts and brackets should be computed by the following method. "The average cost of a standard lamppost and bracket between 1949 and 1962 was approximately $200. Under Rate E the . . . [commission] could have . . . required Edison . . . to install the non-standard poles and avoided the first $200 of investment per pole." The cost of money to Edison "based on the return allowed by the [d]epartment in its last rate case . . . plus the savings in personal property taxes which would be assessed against the Company if it owned the poles" was added to the depreciation and maintenance on the poles to arrive at a total annual allowance of $27.20 a pole.

The department's decision states that, "The . . . [commission] argues that an additional allowance from Rate E should be made with respect to these 721 lights, due to the fact that a substantial portion of the underground plant used to provide power for the lights, was also installed by the . . . [commission]." Depending on what spacing between poles and what cost a linear foot of conduits were assumed an additional annual allowance between $39.91 and $29.39 a pole could be calculated.

The department rejected this argument and refused to award this additional allowance, saying, "Doubtless, Edi-

son had a duty to serve the . . . [commission], but there is no evidence that it would have been required to serve via an underground installation. If Edison would have been obligated to serve only via overhead, then the . . . [commission] ownership of the underground facilities represents a saving to the Edison only to the extent that the costs incurred by Edison in connection with these undergound installations was less than would have been incurred to connect the poles overhead. The . . . [commission's] own evidence indicates that substantial amounts of the cable laid underground and nearly all transformers were at the Company's expense. The record is silent, however, as to whether this expense was less [than] what would have been incurred for an entirely overhead plant."

The department then ruled that, "On this record there is not sufficient evidence that an allowance should be made on account of the ownership of the . . . [commission] of the underground plant. The amount of the allowance, so calculated, appears on its face to be out of proportion to the basic rate, in fact the . . . [commission's] own witness stated 'that he would be surprised if a rate were based on this calculation.' "

The department declined to determine what overcharges had been made by Edison in the past or to order reparations, referring to its decision in the Cambridge Electric Light Company case (one of the companion cases here) in which it said, "Nothing in Chapter 164 suggests that the Department has the power to order gas or electric companies to make reparations. This is in contrast to the power of the Department in Chapter 159, section 14, to order a railroad corporation which has collected an 'unjust, unreasonable or unjustly discriminatory rate . . . to make due reparation to the person who has paid the same . . . .' We think it clear that the explicit reference to this power in this chapter of the General Laws and its absence in another is an intentional limitation of the Department's power, and we have so held previously."

A. The commission contends that the department should have made findings of fact on the amount of adjustment in

the rates due to the contribution of the commission of certain portions of the underground plant. It argues that the department's "order is inconsistent . . . in allowing a reduction for the aboveground contributions but refusing to order one for the underground contribution"; that the "Company failed to sustain its burden of proof that the rates charged by it were reasonable and proper"; that there is "substantial evidence on the record to support a finding by the . . . [department] of an underground allowance, and the failure of the . . . [department] to do so is an error of law and is not supported by subsidiary findings of fact"; and that the department "has failed to make subsidiary findings of fact to support its conclusions that the . . . [commission] is not entitled to a reduction for underground contribution."

Rate E, the street lighting rate, was filed by Edison in 1951 and was subject of an investigation by the department. At that time the department stated that "a utility which seeks an increase in rates on part of its operations must prove in connection with such proceedings, not only that the increase is justified as to the particular service affected but also that its overall operating results require that it have the additional revenue in order for it to realize a fair return." Edison introduced testimony which satisfied the department that "the increase in gross revenues . . . will not result in an income to Edison which is unduly high or more than adequate under the familiar applicable rules of law." D. P. U. 8944.

The commission maintains that the burden is still on Edison to show that adjustments in Rate E due to commission ownership of certain underground installations are not needed, and that the failure of proof on this issue should inure to the benefit of the commission, not Edison. We think the law is otherwise. It is true that when new rates are initially subject to scrutiny by the department for their "propriety" under G. L. c. 164, § 94, the burden is on the utility to show that they are proper. See *Wannacomet Water Co.* v. *Department of Pub. Util.* 346 Mass. 453, 463.

But that rule is only a part of the *general* rule regarding the burden of proof, namely, that the moving party must prove its case. Thus, where a reduction or other adjustment is sought in an existing rate (e.g. under G. L. c. 164, § 93) which has been approved for general application, the party seeking the benefit of such an adjustment has the burden of proving that the existing rate should be changed. *Louisville & Nashville R.R.* v. *United States,* 238 U. S. 1, 11. *Swift & Co.* v. *United States,* 343 U. S. 373, 382. *Antioch Milling Co.* v. *Public Serv. Co. of No. Ill.* 4 Ill. 2d 200, 209. *Carpenter* v. *Home Tel. Co.* 122 Vt. 50, 55. Cooper, State Administrative Law, 355. See Davis, Administrative Law Treatise, § 14.14; 5 U. S. C. § 1006 (c) (1958) (§ 7 [c] of the Administrative Procedure Act).

The reason for this rule was aptly stated in *Antioch Milling Co.* v. *Public Serv. Co. of No. Ill., supra,* 209. "Certainly as a practical matter a utility should not, in the absence of explicit legislative direction, be required to embark upon a full dress justification of its rate structure every time an individual customer files a complaint. . . . [I]n complaint proceedings the burden is upon the complainant to show that existing rates are unreasonable or discriminatory." Strictly speaking, the instant proceedings were not "complaint proceedings" because, under G. L. c. 164, § 93, before the amendment of 1963[3] only "the mayor of a city or the selectmen of a town . . . or . . . twenty customers thereof" could institute proceedings under that statute by complaint.[4] But it is clear that even though the department instituted these proceedings "upon its own motion," they were in the nature of complaint proceedings. They were initiated upon the request of the commission and the adjustment of rates was sought because of the unusual investment by the commission in street lighting equipment.

In the instant case there was no showing that ownership by the commission of parts of the street lighting under-

---

[3] St. 1963, c. 615, § 4.

[4] Now the Attorney General may also institute such complaint proceedings.

ground apparatus actually saved Edison any money because Edison in fact supplied much of the underground equipment and would not have been obliged to install underground facilities in the first place.   Only if the commission could show that Edison had received some benefit would it be entitled to a further reduction in the rate.

B.   The department was correct in ruling that it had no power to award reparations.   Such a power must be expressly conferred by statute, as it was in the case of carriers (G. L. c. 159, § 14).   See *Michigan Bell Tel. Co.* v. *Public Serv. Comm.* 315 Mich. 533, and cases cited therein. The question remains, however, whether the department should have made findings on the issue as to Edison's right to charge the commission under street lighting Rate E or some other rate on file with the department.

At the outset we reject the contention of Edison that questions concerning the legality of past charges were outside the scope of the hearing.   It is quite clear that the department's reluctance to rule on this issue was based on its assumption that its lack of power to award reparations precluded it from making any finding or orders concerning past practices.   The evidence presented was relevant to the propriety of the rates for the future as well as to the legality of the charges made in the past.

Furthermore, the commission made specific requests for rulings which were relevant to past overcharges.   This was a "question of substantive law properly arising in the course of [a] . . . proceeding before the commission" within the meaning of G. L. c. 25, § 5.

Under G. L. c. 164, § 94, an electric company is required to "file with the department schedules . . . showing all rates, prices and charges to be thereafter charged or collected within the commonwealth for the sale and distribution of . . . electricity . . . .   [N]o different rate, price or charge shall be charged, received or collected by the company filing such a schedule from those specified in the schedule then in effect."   General Laws c. 164, § 78, states, "If any [electric company] . . . violates or fails to comply

with the provisions of law, or violates or fails to comply with any lawful order of the department, it shall give written notice thereof to such corporation and to the attorney general.'' The department is authorized by G. L. c. 164, § 93, to hold hearings on its own motion "as to the quality or price of the . . . electricity sold and delivered.''

We believe these statutes are adequate authority for the department to inquire into whether the rates, prices and charges, charged or collected, for the sale and distribution of electricity by an electric company have conformed to the schedules filed with that agency. If a deviation between a filed rate and an actual charge could be shown the department would be required to give notice to the Attorney General under G. L. c. 164, § 78. We need not speculate on what action would be appropriate for the Attorney General to take in those circumstances.

This appeal does not present the question of what remedies the commission may have against Edison in the event the department should find that the commission has been overcharged. Nevertheless, because of the importance of this and in order to avoid unnecessary further proceedings we deem it advisable to express our views on this issue. *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731. *Commonwealth* v. *Kleciak,* 350 Mass. 679, 689.

We do not interpret the absence of a specific power in the department to award reparations for overcharges as an expression of legislative intent that a customer who has been so overcharged may not recover for such overcharges in an appropriate action. This does not mean that a customer may attack the propriety or reasonableness of the rates on file if he has actually been charged under the correct rate. *Boston* v. *Edison Elec. Illuminating Co. of Boston,* 242 Mass. 305. See *T. I. M. E. Inc.* v. *United States,* 359 U. S. 464. Note, 73 Harv. L. Rev. 84, 213–217. But if, in the instant case, the department should find that the commission has been overcharged because it should have been charged under some rate on file other than Rate E, Part V, we see no reason why the commission cannot recover the difference.

The case of *State ex rel. Kansas City Power & Light Co.* v. *Buzard, Judge,* 350 Mo. 763, considered a problem similar to the one now before us. The relator was being sued in the State Circuit Court by one of its customers for overcharges on the ground that the wrong schedule had been applied for the service actually rendered to the customer. The relator brought this action in prohibition in the State Supreme Court to challenge the jurisdiction of the Circuit Court on the ground that the State Public Service Commission had exclusive jurisdiction to determine which rate applied. The court held that the customer could sue to recover the overcharges but that the matter had to be first considered by the Public Service Commission for a determination of which rate classification applied to the customer.

"The Legislature, realizing that to make proper classification as to the service rendered and the applicable rate for such service, has wisely left the technical facts to be determined by experts of the Public Service Commission. . . . [I]n determining the proper classification to which . . . [the customer] is entitled would require technical and expert knowledge and skill." *State ex rel. Kansas City Power & Light Co.* v. *Buzard, Judge, supra,* 769.

Even though the determination of which rate was proper in the case at bar may not be as technical a matter as that suggested by the facts in the Missouri case, we think the department should have an opportunity to pass on this question. From our examination of the testimony and the exhibits, it does not appear that any filed rate precisely fits the actual service rendered. Therefore, on the record before us, it would seem that the main issue the department would be called upon to decide is whether the service actually rendered to the commission differed so radically from that described in street lighting Rate E, Part V, that one of the other rates on file with the department is more applicable to the service rendered.

Our holding in *Commonwealth* v. *Massachusetts Elec. Co.* 347 Mass. 780, was based on the special requirements of the declaratory judgments act, G. L. c. 231A, § 8, and should

not be construed to require the joinder of the department in any action which the commission might bring to recover for overcharges. The reasons for requiring the joinder of the department in that case would be satisfied, so long as the department first passed on the matters requiring its decision.

### The Massachusetts Electric Company Case.

The facts in this case are essentially similar to those in the Edison case and do not warrant elaboration.

A. On the issue of the allowance due to commission ownership of a major part of the street lighting installations the department found, following its decision in the Edison case, that the allowance should be based on the saving to the electric company, not the cost to the commission. It computed the annual saving to the company by combining three factors: (1) the approximate annual rate of return which the company achieved in 1964, set at 5%; (2) the local taxes, expressed as a percentage of the net value of the plant of the company, found to be 4%; and (3) depreciation, found to be 3%. The total of these percentages, 12%, was then applied to the cost of the installed pole, $265, to arrive at an annual allowance of $31.80.

The commission points to the testimony of a witness for the Massachusetts Electric Company (company) who said that the "annual cost figure" used by the company when estimating what additional rate should be charged for underground service was "14½% to 15%." The commission then argues that, "The evidence clearly indicates that the allowance of $31.80 for the above ground contribution made by the . . . [commission] is inadequate if the undisputed testimony presented by the Company's witness indicates an annual cost factor of 14½% to 15%." We do not agree.

There was testimony as to the method of calculating the annual cost factor which supported the method used by the department. We are satisfied that there was substantial evidence from which the department could find that the

proper annual allowance for the installed poles was 12%. See G. L. c. 30A, §§ 1 (6), 14 (8).

The commission also argues that an allowance should be made for its ownership of the underground facilities connecting the poles. But here, as in the Edison case, there was no showing that the company would be required to provide underground service at its own expense and consequently there was no proof that the commission's ownership of those facilities saved the company any money.

B. Our previous discussion of the reparations issue governs that aspect of this case.

### THE CAMBRIDGE ELECTRIC LIGHT COMPANY CASES.

A. Shortly after the investigation by the department (instituted January 16, 1963) on its own motion and upon complaint, the Cambridge Electric Light Company filed a new rate schedule to supersede those rates which the department was investigating. The department voted to suspend those new rates until February 1, 1964, pending an investigation of their propriety and to consolidate that investigation with the first investigation. On January 31, 1964, the department issued an order disallowing the new rate schedule "pending future investigation and consideration by the Department." The company brought a petition for review of that order. A single justice of this court remanded the matter to the department "for clarification of its order, for appropriate and complete subsidiary findings of fact, and for other appropriate action complying with the State Administrative Procedure Act." The company appealed from this order of the single justice. A decree remanding a matter to an administrative agency is not appealable. *Marlborough Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 737. See G. L. c. 214, § 19. Following the remand the department, on April 16, 1964, made an order in the consolidated proceeding before it. The company did not seek review of the ultimate disposition of its case made by the order of April 16, 1964. That case must be dismissed.

The commission brought a petition for review of the final order of the department of April 16, 1964. Much of the commission's argument assumes that the new rates ultimately set by the department have been approved as tariffs filed by the company under G. L. c. 164, § 94. It attacks the failure of the department to make findings as to the rate base of the company and argues that the evidence does not support a finding that the rates are reasonable. But the order of the department makes clear that the proposed rates were disallowed and the "modification" of the proposed rates was "never filed as a tariff in accordance with" G. L. c. 164, § 94. Its order was made in the same posture as the order in the companion cases, namely a modification of existing rates found to be necessary because of the commission's ownership of portions of the street lighting equipment in question.

We have examined the record and are satisfied that the decision of the department to modify the rates charged by the company to the commission is supported by substantial evidence. As we stated in the Edison case, the burden was on the commission to prove that additional reductions should have been made.

B. What we have said above in our discussion of reparations applies equally to this case.

## CONCLUSION.

A final decree is to be entered in the case of Cambridge Electric Light Company *vs.* Department of Public Utilities & another dismissing the petition.

A final decree is to be entered in each of the three remaining cases affirming the order of the department except as to that portion of the order in regard to the termination of the investigation. That portion of the order is to be annulled. The cases are to be remanded to the department for further proceedings in accordance with this opinion.

*So ordered.*