Trustees of Clark University & others[1] vs. Department of Public Utilities & another.[2]

Suffolk.   March 9, 1977. — April 5, 1977.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*Public Utilities. Electric Company. Practice, Civil,* Review of order of Department of Public Utilities.

An appeal from an order of the Department of Public Utilities permitting an electric company to increase its rates was not rendered moot by a subsequent order reducing those rates where a retroactive adjustment of the rates resulting in a refund to certain of the company's customers remained a possibility and where the appeal raised issues likely to come before this court again. [333-334]

Upon appeal by an intervener from an order of the Department of Public Utilities permitting an electric company to increase its rates, the issue for appellate review was whether the department's acceptance of the company's proposed rate structure conformed to the requirements of G. L. c. 30A; it was irrelevant whether the intervener's proposal was supported by substantial evidence or was logically more attractive than the company's proposal. [334-335]

A decision of the Department of Public Utilities permitting an electric company to increase its rates to recover an increase in its wholesale power costs on a uniform basis applicable to all customers rather than on a percentage basis set forth a sufficient statement of reasons as required by G. L. c. 30A, § 11 (8), and was supported by substantial evidence as required by G. L. c. 30A, § 14 (7) (*e*). [335-337]

Petition filed in the Supreme Judicial Court for the county of Suffolk on March 31, 1976.

The case was reserved and reported by *Kaplan, J.*

*Andrew J. Newman* for Trustees of Clark University & others.

[1] The other plaintiffs are: Trustees of the College of the Holy Cross; St. Vincent's Hospital of Worcester; Worcester Polytechnic Institute; Young Men's Christian Association of Worcester; Cincinnati Milacron, Inc., Heald Machine Division; Data General Corporation; Digital Equipment Corporation; Incoterm Corporation; Maynard Plastics, Inc.; Norton Company; Paul Revere Life Insurance Company; Worcester Center Associates; and Wyman-Gordon Company.

[2] Massachusetts Electric Company, intervener.

*Samuel Huntington* for Massachusetts Electric Company, intervener.

*Margot Botsford*, Assistant Attorney General, for the Department of Public Utilities.

WILKINS, J.  On March 1, 1976, the Department of Public Utilities (department) permitted the Massachusetts Electric Company (company) to implement a rate increase of 1.86 mills per kilowatt hour (KWH) for nearly all the company's customers.[6] The rate adjustment was designed to recover a simultaneous increase in the company's wholesale power costs. The company purchases its power from the New England Power Company which, effective March 1, 1976, was permitted by the Federal Power Commission (FPC) to increase its charges to the company, subject to possible adjustment following the conclusion of rate proceedings before the FPC. The company's rate adjustment, called Purchased Power Cost Adjustment # 5 (PPCA # 5), as approved by the department, requires refunds to the company's customers, in a manner approved by the department, if the FPC proceedings result in a refund or credit to the company from the New England Power Company.

The plaintiffs, industrial and institutional customers of the company which intervened in the department's proceedings (the Clark group), have appealed from the decision and order of the department. They challenge not the amount of the increase, but the method by which the increase was allocated among the company's customers. The company has been permitted to intervene here. The case has been reserved and reported to this court by a single justice. We conclude that the department did not exceed its authority in approving the company's filing.

A purchased power cost adjustment is intended to permit the company to modify its rates to reflect changes in the cost of its purchased power without submitting a full-fledged rate filing. Such an adjustment is temporary, al-

---

[3] No adjustment was proposed for street lighting rates.

though of undefined duration, because any outstanding adjustment will be eliminated when the company thereafter obtains approval of a general rate filing or when, as is the case with respect to PPCA # 5, a subsequent purchased power cost adjustment is approved by the department. The department has approved PPCA # 6, effective February 1, 1977, reducing the uniform charge from that in effect under PPCA # 5 by 0.21 mills per KWH. An appeal has been taken from that decision and order as well, but that appeal has not yet been argued.

We turn first to the contention advanced in a motion to dismiss filed by the department and the company. They claim that all issues concerning PPCA # 5 are moot because it has been superseded by PPCA # 6. They argue that, even if the Clark group were successful here, there is no way by which a retroactive redistribution of the company's revenue needs can be made among its customers. Certainly, if, as a result of this appeal and subsequent department proceedings, the obligation of the company's industrial customers is reduced, the company's admitted revenue deficiency will have to be made up from customers in other rate classifications. No party suggests any lawful method by which additional funds could be collected from other customers in this circumstance. See *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.*, 352 Mass. 18, 26 (1967). The Clark group argues, however, that a retroactive adjustment may be made in its favor because any refund from the New England Power Company, following conclusion of the FPC rate proceeding, may be allocated specifically to customers, such as themselves, who pay an industrial rate, so as to achieve (or at least to tend toward achieving) the rate distribution for which it contends.

Although there is no certainty that there will be a refund, we are disinclined to treat the case as moot. The possibility of a refund has not been shown to be so remote as to justify a refusal to deal with the merits of the case. Moreover, in certain aspects, the appeal raises issues which are likely to come before us again, perhaps even in the

Clark group's appeal from the department's decision and order approving PPCA # 6. See *Board of Gas & Elec. Comm'rs of Middleborough* v. *Department of Pub. Utils.*, 363 Mass. 433, 436 (1973). We turn then to a consideration of the decision of the department and the Clark group's objections to it.

The department's decision gives relatively little attention to the method advanced by the Clark group for the distribution of the burden of the company's needed revenue increase. In approximately ten lines of its decision the department dismissed the Clark group's proposal for distributing the increase disproportionately among the company's residential, commercial, and industrial customers. The Clark group's proposal was based on its assertion that the increase in rates needed by the company was largely attributable to increases in peak demand for which industrial customers were less responsible than commercial and particularly residential customers. The department, somewhat inaccurately, characterized the Clark group's proposal as one which would place the major burden of the increase on the residential classification. The department said that the evidence did not support the Clark group's case. However, at least part of the alleged deficiencies in the Clark group's case may be equally applicable to the company's case. Perhaps the department's discussion of the Clark group's proposal would not be adequate as a statement of reasons, as required by G. L. c. 30A, § 11 (8), if the Clark group had been an unsuccessful party whose own proposal was before the department for action. However, the issue before the department was not the reasonableness and acceptability of the Clark group's proposal. An intervener's case should not be ignored. See *Framingham* v. *Department of Pub. Utils.*, 355 Mass. 138, 147 (1969). It is not, however, the focus of attention.

The company and the Clark group were not in the same position before the department. The Clark group, as interveners, had no affirmative proposal requiring department action. Its only role was in opposition to the company's

filing, the acceptance or rejection of which was the crucial issue. The Clark group could advance its own proposals with the hope that they would attract the department's interest in preference to the company's proposal. But if, as is the case, its view did not prevail, the issue for appellate review is whether the department's acceptance of the company's proposal conformed to the requirements of G. L. c. 30A. The fact that the Clark group's proposal was supported by substantial evidence, and perhaps might be logically more attractive than the company's proposal, is of no consequence, if we accept, as we must, the statutory stamp of expertise placed on the judgment of the administrative agency. Thus, unless an error of law or misconception shown in an agency's treatment of the case on behalf of an intervener prejudicially taints the agency's decision on the principal matter before it, the relative merits of the intervener's case is of no consequence in our appellate assessment of the propriety of the agency's action. We turn then to the department's decision and the Clark group's attack on it as it relates to the company's proposal.

The department gave a number of reasons for its decision to uphold the company's proposal for a flat 1.86 mills per KWH increase applicable to all customers of the company. A uniform application of an increase "has been traditionally followed in similar cases." The "processing of refunds and reductions at the conclusion of . . . [FPC] proceedings will be more easily accomplished than in the case of percentage increases." The department added that percentage increases "tend to have the effect of perpetuating existing inequities in rate structures," and that "uniform application of the increase accomplishes the apparently desirable goal of even distribution of electric costs." The department noted the temporary nature of the rate adjustment and observed that later there would be a more appropriate proceeding at which to consider the best method of distributing the increased costs of the company among its customers.

The Clark group argues that the department's decision

fails to set forth a sufficient statement of reasons, as required by G. L. c. 30A, § 11 (8), and that the decision is not supported by substantial evidence, as required by G. L. c. 30A, § 14 (7) (*e*). The basic argument seems to be, not that the department did not give reasons for its action, but that the reasons given by the department are insufficient to support its decision because they are "clearly erroneous, arbitrary and capricious and not supported by substantial evidence."

The department presented adequate reasons for its decision so as to permit us to determine whether the decision was supported by substantial evidence and otherwise was in accordance with law. See *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 687 (1975). We think the reasons given are adequate to justify the department's decision and that the factual bases for the reasons are supported by substantial evidence. We think the department was warranted in concluding that the question of rate structure was one which better could be dealt with in a full rate adjustment proceeding or in some proceeding having a broader scope than one designed to provide a temporary adjustment in response to a change in the company's cost of purchased power. The department properly considered the prospect of a refund to the company by the New England Power Company, and the resulting obligation on the company to make refunds to its customers. The ease of making refunds under the form of adjustment proposed by the company and the ease of checking to be certain they have been made properly are rational considerations in support of the proposed rate adjustment. Finally, the uniform impact of PPCA # 5 on each KWH purchased by each customer of the company is a rational basis for the department's decision. Where both the company and the department determine that a particular cost shall be borne equally by all, based on power usage, we see no role on this record for the courts in disapproving such a result as arbitrary or capricious. A Massachusetts utility's rates need not be structured on a cost-related basis, unless, after fair warning, the depart-

ment requires that approach. See *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 371 Mass. 67, 83-84 (1976). The Legislature has expressed public policy in a related area by directing that a utility's charges for the cost of at least fossil fuel "shall be billed at a single uniform rate per kilowatt-hour used by a customer." G. L. c. 164, § 94G, inserted by St. 1974, c. 625, § 1. A uniform rate based on usage is not beyond the power of the department to permit.[4]

The motion to dismiss the appeal on grounds of mootness is denied. A judgment is to be entered affirming the order of the department.

*So ordered.*

---

[4] In another proceeding pending in this court, the intended scope of G. L. c. 164, § 94G, is under consideration.

We recognize that the company's cost of power is not exclusively influenced by the cost of fuel and thus PPCA # 5 is not a fuel adjustment clause. The peak demand for power made by the company also affects its cost of purchased power, and certain classes of customers may contribute to creating that peak demand more than others.