Welch, J.
The plaintiffs, citizens of the town of North Andover, seek judicial relief ordering the North Andover Board of Health to conduct a public hearing in order to determine whether to issue a site assignment for the operation of a refuse incinerator at 285 Holt Road, North Andover. The plaintiffs framed the issue raised by this lawsuit precisely: “Doesn’t the North Andover Board of Health have a statutory responsibility to conduct site assignment proceedings with respect to an existing incinerator on Holt Road?” Based upon the facts set forth in the plaintiffs’ amended complaint, together with other undisputed facts, the answer to this question is also precise: “No.” This answer is delivered by granting the plaintiffs’ motion to amend their complaint and allowing the defendants’ motion to dismiss.
Background[1]
During the late 1970s and early 1980s, the Commonwealth’s Department of Environmental Management (“DEM”) responded to the dwindling supply of solid waste landfill capacity and growing questions about the continued use of unlined landfills by pro *109 moting the development of regional solid waste resource recovery facilities. Specifically to address the needs of communities in northeastern Massachusetts, DEM promoted the development and financing of a resource recovery facility located in North Andover (the “Facility”).
On or about June 24, 1981, the Commonwealth of Massachusetts, through the DEM, took by eminent domain 14.62 acres of property located in North An-dover for the express purpose of constructing a solid waste/energy recovery facility. DEM assisted in the selection of the site, issued requests for qualifications and proposals for construction and operation of the Facility, assisted in the selection of the contractor to build and operate the Facility, assisted in structuring financing for the Facility, and leased land to the Facility. In January of 1983, the Commonwealth, through the DEM, entered into a lease agreement with Defendant, Massachusetts REFUSETECH, Inc. (“MRI”), for the construction and operation of the Facility.
On February 17, 1982, which was prior to entering into the agreement with MRI, pursuant to G.L.c. Ill, §150A, the DEM applied to the Department of Environmental Quality Engineering (“DEQE”) for a site assignment for a “solid waste /energy recovery facility for the purpose of solving the solid waste problems of the communities in the eastern section of Massachusetts.” The DEQE held a public hearing on March 23, 1982 that was duly advertised in local newspapers. At the hearing, representatives of the State Bureau of Solid Waste Disposal (“Solid Waste Bureau”) presented a detailed description of the proposed facility and its operational aspects. Residents of North Andover participated in the public hearing and raised a number of issues that were addressed by consultants to the Solid Waste Bureau. The North Andover Board of Selectmen also presented its concerns at the hearing. The DEQE kept the record of the public hearing open for written comments through April 2, 1982.
The DEQE issued its site assignment decision in a letter to the DEM dated May 11, 1982. The DEQE incorporated several conditions requested by the Board of Selectmen into the site assignment. The letter also explicitly laid out the appeal rights of aggrieved persons:
Anyone aggrieved by this action of the Department may request an adjudicatory hearing within twenty-one days of the date of this action. The request must be in writing and must state clearly and concisely every point of fact and law which the person making the request intends to raise at the adjudicatory hearing.
The North Andover Board of Health published notice of the site assignment. No one appealed the site assignment.
The facility was financed by municipal industrial bonds in 1983. In January of 1983, the Commonwealth leased the incinerator premises to defendant MRI, a private company, for the purpose of constructing the incinerator. The incinerator was in operation by 1985.
In 1996, defendant MRI proposed to retrofit the facility in order to comply with the Clean Air Act Amendments of 1990 and to extend the useful life of the facility.
At least by 1998, North Andover citizens made demand on the town’s Board of Health to hold a public hearing and to determine whether to issue a site assignment to the MRI incinerator. The Board of Health has not held such a hearing.

DISCUSSION

A. Plaintiffs’ Motion for Leave to Amend the Complaint
Plaintiffs now move this Court for leave to amend their complaint in the following respects: (1) to change the prayer for relief from a request for an order of certiorari to a request for an order of mandamus; (2) to add to the prayer for declaratory relief a specific reference to G.L.c. 231 A, §1 et seq.; (3) to name as defendants parties to a settlement agreement signed by the Board of Health on December 14, 1998; (4) to include more particular allegations as to the standing of the plaintiffs to sue; and (5) to make a number of minor corrections to the factual allegations.
The decision whether to grant a motion to amend is within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion. Goulet v. Whitin Mach. Works, Inc., 399 Mass. 547, 549 (1987); Castellucci v. United States Fidelity & Guar. Co., 372 Mass. 288, 289-290 (1977). See Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974).
The defendants have not demonstrated that plaintiffs’ motion arises from undue delay, bad faith, or dilatory motive. Castellucci, 372 Mass. at 290. The defendant will not be unduly prejudiced by virtue of allowance of the amendment. Id. Accordingly, plaintiffs’ Motion for Leave to Amend the Complaint is ALLOWED.
B. Defendants’ Motion to Dismiss the Amended Complaint
The defendants move, pursuant to Rule 12(b)(1) of the Mass.R.Civ.P., that this Court dismiss the plaintiffs’ amended complaint on the ground that this Court does not have jurisdiction to hear this matter.
Unlike with a Mass.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted, the Court may consider materials beyond the scope of the pleadings with a Mass.R.Civ.P. 12(b)(1) motion to dismiss for lack of jurisdiction. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 n.6 (1998), citing 5A Wright & Miller, Federal Practice & Procedure §1350 (2d ed. 1990).[2]
*110 A motion to dismiss for lack of jurisdiction based on factual insufficiency of the complaint should be granted where the plaintiffs allegations, even if taken as true, do not establish the court’s jurisdiction to hear the claim. Ginther, 427 Mass. at 322. When a remedy is created by statute, and the time within which it may be availed of is one of the prescribed conditions for relief, failure to meet that time limit deprives a judicial body, court, or administrative appeals board of jurisdiction to hear the case. Nissan Motor Corp. in U.S.A. v. Commissioner of Revenue, 407 Mass. 153, 157 (1990). “Failure to take an appeal within the prescribed period from the granting or denial of a permit is a bar to direct review of the action in respect of the permit.” Greeley v. Zoning Board of Appeals, 350 Mass. 549, 552 (1966). The remedy thus becomes unavailable after the statutory deadline. Nissan Motor Corp., 407 Mass. at 157.
This action warrants dismissal under Mass.R.Civ.P. 12(b)(1) for two reasons. First, dismissal is warranted because the allegations of the plaintiffs’ complaint fail to provide the basis for jurisdiction over any of their claims. Second, the failure to exhaust the specified administrative remedies, particularly in light of the legislative mandate specifying those administrative appeals as the exclusive avenue of relief, precludes this Court from granting either mandamus or declaratory judgment.
In 1981, the Commonwealth, through the DEM, began to establish the North Andover solid waste disposal site. As part of this process, the DEM applied to DEQE for a site assignment pursuant to G.L.c. 111, §150A which provided in relevant part:
No place in any city or town shall be established or maintained or operated by any person, including any political subdivision or agency of the Commonwealth, as a site for a facility, unless such place has either been assigned by the board of health of such city ... or in the case of an agency of the Commonwealth, has been assigned by the department after a public hearing and unless public notice of such assignment has been given by the board of health.
G.L.c. 111, §150A (as in effect May 11, 1982) (emphasis added). The DEQE issued its site assignment decision in a May 11, 1982 letter to the DEM. Even though the site was to be leased to a private entity, the DEM, an agency of the Commonwealth, was applying for the site assignment and thus, a state agency “established” this facility site. Notice of the site assignment and the appeal rights of aggrieved persons was duly published. As such, DEM fully complied with the statute.
Subsequent to an administrative appeal, persons aggrieved could have sought judicial review under G.L.c. 111, §150A, G.L.c. 30A, §14, or G.L.c. 249, §4. The Plaintiffs here did not pursue any of these avenues for judicial review and the site assignment issued by DEQE was not appealed. The time in which an appeal could have been brought has long passed. Accordingly, this court does not have jurisdiction to hear any action challenging the validity to the 1982 site assignment.
Plaintiffs attempt to revive this action by arguing their grievance is not with the 1982 actions of the DEQE, but with the continued failure of the North Andover Board of Health to conduct independent site assignment proceedings. Yet, in the case of a facility established by a state agency, the local board of health has no power or authority to conduct an independent site assignment. See, G.L.c. 111, §150A (1996 ed. & Supp. 1999).
Even if the facility were entirely established, owned, and operated by a private entity, the governing statute, G.L.c. 111, §150A, does not impose a duty upon the Board of Health to initiate a site assignment proceeding. The statute prohibits the operation of a facility without a valid site assignment, but the burden of compliance is placed on the facility owner or operator by requiring the owner or operator to apply for a site assignment, or risk exposure to civil and criminal penalties. The statute does not mandate that a board of health initiate a site assignment process or take any other enforcement action when a facility owner is alleged to be operating without a valid site assignment: Indeed, the statute does not even grant a board of health authority to initiate a site assignment process in the absence of a pending application.
The law also does not permit a new site assignment simply because the facility equipment is to be repaired and/or retrofitted. To the contrary, G.L.c. 40D, §21(h) provides that a site assignment issued to a solid waste facility, financed by municipal industrial revenue bonds, “may not be rescinded, other than appeal from the original assignment. . ,”[3]
Thus, it is clear that the Board of Health does not have authority to conduct a site assignment on a solid waste facility established and owned by the Commonwealth. Such authority is specifically granted by G.L.c. Ill, §150A, to the DEM, and at the time of the 1982 site assignment, to the DEQE. The Commonwealth obtained a valid site assignment from DEQE which was not challenged. The mere fact that the Commonwealth contracted with a private entity for construction and operation of the facility does not give rise to any authority of the Board of Health to conduct site assignment proceedings.
Furthermore, this Court is specifically precluded from granting either mandamus or declaratory relief in this case. One seeking administrative action must pursue and exhaust the remedy provided for such administrative procedure before he can maintain a petition for a writ of mandamus. Karl v. Wolsey Co., Inc., 324 Mass. 419, 422 (1949). Mandamus is properly denied where the plaintiff fails to exhaust administrative remedies. Holbrook v. Board of Selectmen of East Bridgewater, 354 Mass. 756 (1968). Mandamus *111 is an extraordinary remedy available only in the absence of any other effective remedy. Doherty v. Retirement Bd., 425 Mass. 130, 13 5 (1997). The fact that an alternative remedy is time barred is insufficient grounds to warrant mandamus relief. Thayer v. Clerk of Dist. Court, 421 Mass. 1001 (1995).
Similarly, absent extraordinary circumstances, declaratory relief under G.L.c. 231A, §1 etseq. is unavailable to plaintiffs who have failed to exhaust administrative or other statutory remedies. See, e.g., Space Bldg. Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992); Iodice v. City of Newton, 397 Mass. 329, 333 (1986). This rule governs regardless of whether other remedies are time barred. Hathaway v. Commissioner of Ins., 379 Mass. 320, 326 (1964). In the absence of special circumstances it is improper to give declaratory relief where an administrative remedy was unavailable because it had not been pursued within the time prescribed. Harron Communications Corp. v. Town of Bourne, 40 Mass.App.Ct. 83, 86 (1996).
Here, the plaintiffs failed to pursue and exhaust administrative or statutory remedies available. Such remedies are now time barred. Plaintiffs have failed to allege any special circumstances to justify the failure to pursue administrative or statutory remedies in a timely manner. Because plaintiffs failed to seek timely administrative or judicial review of the 1982 site assignment, they cannot now seek relief in the nature of mandamus or declaratory relief under G.L.c. 231A to compel the Board of Health to conduct a site assignment.

ORDER

For the foregoing reasons, plaintiffs’ motion to amend the complaint is ALLOWED and the defendants’ motion to dismiss this action is ALLOWED.

None of the facts set forth are disputed. They are gleaned from the complaint and the extensive exhibits and affidavits submitted by both sides.

Further, both sides have submitted extensive exhibits in connection with these motions and, thus, the Court could consider this matter as one for summary judgment, particularly since no party has identified any disputed issue of material fact.

There is no dispute that this facility was financed initially pursuant to c. 40D, §21, through the sale of public industrial revenue bonds by the Town of North Andover and those bonds were refinanced in 1993 through the Massachusetts Industrial Finance Agency pursuant to G.L.c. 23A, §35{a).