ATTORNEY GENERAL & another[1] *vs.* DEPARTMENT OF
PUBLIC UTILITIES.

Suffolk. February 9, 1984. — June 20, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN & LYNCH, JJ.

*Public Utilities,* Judicial review, Rate structure.

On appeal of a rate setting decision of the Department of Public Utilities, this
court is not limited to considering whether the Department has established
a rate of return which is not commensurate with returns on other invest-
ments with corresponding risks or a rate that is not sufficient to insure
confidence in a utility's financial integrity, but may also consider the
grounds for reversal of an administrative decision specified in G. L.
c. 30A, § 14. [264-265]

In a proceeding before the Department of Public Utilities on a proposed gas
service rate increase by a gas and electric company, the Department did
not err in determining the cost of equity to the company based on the
company's over-all financial position, rather than considering only those
risks attending investment in the company's gas service operations.
[265-269]

The statement of findings and reasons made by the Department of Public
Utilities in a proceeding on a proposed gas service rate increase by a
gas and electric company was inadequate to enable this court to determine
whether certain securities issued by the company were properly included
in the company's capital structure for the purpose of setting gas service
rates. [269-272]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on March 15, 1983.

The case was reported by *Nolan,* J.

*George B. Dean,* Assistant Attorney General, for the plaintiff.

*John A. DeTore,* Special Assistant Attorney General (*Harold
J. Keohane,* Special Assistant Attorney General, with him) for
the defendant.

---

[1] Fitchburg Gas and Electric Light Company, intervener in this appeal.

*Paul K. Connolly, Jr.* (*Adrienne M. Markham* with him) for the intervener.

HENNESSEY, C.J. Fitchburg Gas and Electric Light Company (Fitchburg) filed with the Department of Public Utilities (department) new gas rate schedules designed to increase its annual revenues from the sale of gas by $3,377,596, effective August 1, 1982. The department suspended operation of the proposed rates until February 1, 1983. Pursuant to G. L. c. 12, § 11E, the Attorney General intervened and participated in the proceedings held to review the proposed rates. The department held evidentiary hearings on the rates during September and October, 1982. It rendered its decision on January 31, 1983, allowing the company an annual rate increase totaling $2,043,226. Subsequently the department, by an order on February 4, 1983, which allowed Fitchburg's motion for reconsideration, raised the increase to $2,317,838. The Attorney General also filed a motion for reconsideration which was denied. The Attorney General then appealed under G. L. c. 25, § 5, challenging the department's order allowing the rate increase. A single justice of this court allowed Fitchburg's motion to intervene in the appeal, and reserved and reported the case to the full court.

The Attorney General raises two issues on appeal: (1) whether the department erred in determining the cost of equity for the purpose of calculating a proper rate of return in establishing gas service rates; (2) whether the department erred by including in Fitchburg's capital structure, for the purpose of determining gas service rates, securities issued by Fitchburg in 1981 and 1982.

Both parties note, correctly, that we review the department's actions challenged here under the standards set forth in G. L. c. 30A, § 14 (7). We will uphold the department's decision unless the Attorney General sustains his burden, G. L. c. 25, § 5, of demonstrating that the decision was based upon an error of law or was otherwise improper under the standards contained in G. L. c. 30A, § 14 (7). We note that the Attorney General's burden is heavy. Deference is owed the department's expertise and experience in the areas of decision-making dele-

gated to it by the Legislature. *Costello* v. *Department of Pub. Utils.,* 391 Mass. 527, 533 (1984). "We do not substitute our judgment for that of an administrative agency where no constitutional question is presented." *Attorney Gen.* v. *Department of Pub. Utils.,* 390 Mass. 208, 228 (1983).

We conclude that the Attorney General has not sustained his burden of proving the department erred in basing the cost of equity to Fitchburg, for the purpose of establishing gas service rates, on the financial position of Fitchburg as a whole. We do not decide, however, whether the Attorney General has sustained his burden of proving the department erred in failing to adjust Fitchburg's capital structure. We are unable to reach the merits of this second issue raised by the Attorney General. The statement of subsidiary findings provided by the department with its rejection of the Attorney General's position is inadequate for us to conduct a proper appellate review. Cf. *Attorney Gen.* v. *Department of Pub. Utils.,* 390 Mass. 208, 218 (1983). Accordingly, we uphold the department's determination of the cost of equity but remand the case to the department for further findings regarding the Attorney General's proposed alteration of Fitchburg's capital structure for the purpose of setting gas rates.

As an initial matter, the department contends that we need not reach the merits of the Attorney General's claims. It stresses that the Attorney General does not assert that the department's order established a rate of return for Fitchburg which is not commensurate with returns on investments in other enterprises having corresponding risks, or a return that is not sufficient to assure confidence in Fitchburg's financial integrity. The department then contends that these are the only bases upon which the Attorney General may challenge the department's order. It argues that "the State Administrative Procedure Act is satisfied if the return on common equity meets the comparable earnings and attraction of capital tests." Accordingly, it argues that the issues raised by the Attorney General are not "relevant" to our review of the order and should not be considered. We disagree. While error based on comparable earnings or capital attraction grounds would warrant a decision reversing and re-

manding an order of the department, see *FPC* v. *Hope Natural Gas Co.*, 320 U.S. 591 (1944), our review of an order of the department may include a consideration of other errors specified in G. L. c. 30A, § 14, as well. See *Attorney Gen.* v. *Department of Pub. Utils.*, 390 Mass. 208, 222-232 (1983); *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, 376 Mass. 294, 302-308 (1978).

1. *Cost of Capital*

Rates for service provided by a regulated public utility must be set to allow a fair rate of return to investors on the value of the property used in providing those services. *Bluefield Water Works & Improvement Co.* v. *Public Serv. Comm'n*, 262 U.S. 679, 690 (1923). "A return is fair and reasonable if it covers utility operating expenses, debt service, and dividends, if it compensates investors for the risks of investment, and if it is sufficient to attract capital and assure confidence in the enterprise's financial integrity." *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 371 Mass. 881, 884 (1977). *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, 376 Mass. 294, 299 (1978). Here, the department used the "cost of capital" method for determining a fair rate of return on the rate base. See *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 360 Mass. 443, 462-463 (1971). The only objection the Attorney General has to the department's use of this methodology is in connection with the department's calculation of Fitchburg's cost of equity.[2]

---

[2] The Attorney General first claims the department provided an inadequate statement of reasons in its decision. He argues that the department's rejection of his position, that only the risks relating to Fitchburg's investment in gas service operations should have been considered in determining the cost of equity for the purpose of setting gas rates, was inadequate. We disagree. The Attorney General was an intervener in the proceeding. The department, therefore, was not required to address in its statement of reasons all the arguments of the Attorney General with the same detail as would be required if the Attorney General "had been an unsuccessful party whose own proposal was before the department for action." *Trustees of Clark Univ.* v. *Department of Pub. Utils.*, 372 Mass. 331, 334 (1977). This is not to say that an intervener's position may be rejected without a statement of reasons. See *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 532-539 (1984). Rather, to the extent we bring less scrutiny to bear on an agency's statement

"In general, the return on equity must equal at least 'the amount which the company would have to pay in order to "hire" its equity capital under current conditions.' *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 327 Mass. 81, 88 (1951)." *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, *supra* at 299-300. In calculating this cost of equity, the guiding principle is that the return on equity "should be commensurate with returns on investments in other enterprises having corresponding risks." *FPC* v. *Hope Natural Gas Co.*, *supra* at 603. See *Boston Edison Co.* v. *Department of Pub. Utils.*, 375 Mass. 1, 11, cert. denied, 439 U.S. 921 (1978).

For the purposes of determining a proper return on equity, the department considered the risks attending investment in Fitchburg as a whole. The department considered testimony concerning the risk ratings Fitchburg received in industry publications and Fitchburg's general financial integrity. It then allowed a 16.3% return on equity. The Attorney General asserts that the department's reference to the risks of Fitchburg's financial position as a whole in determining a proper return on equity for the purpose of setting rates on gas services constituted error of law, was unreasonable, and was an abuse of administrative discretion. According to the Attorney General, the return on equity should have been set by considering only those risks attending investment in Fitchburg's gas service operations.

---

of reasons rejecting an intervener's challenge to a party's proposal, we are only recognizing the obvious point that the party's proposal is the focus of attention. See *Clark, supra.* Here, the department described the Attorney General's position, and Fitchburg's opposition to it, and rejected it. The department reasoned that the record presented no practical way to separate the risks attending the gas service and electric service components of Fitchburg for the purpose of determining the rate of return on equity which investors in Fitchburg's securities would require. Accordingly, it rejected the Attorney General's proposal to separate the risk calculation associated with Fitchburg's common equity into electric and gas components and to establish a theoretical required return on equity for gas service operations alone. We conclude this statement of reasons is sufficient for us to conduct our appellate review and, therefore, is adequate. G. L. c. 30A, § 11 (8). See *Trustees of Clark Univ.* v. *Department of Pub. Utils.*, *supra* at 334-335.

The Attorney General conceded at oral argument that he presents no constitutional or statutory basis for his claim that "[t]he Department's holding that '[t]he allowed return on equity must reflect the Company's overall financial condition' is an error of law." He relies instead on common law principles. In particular, he relies on those cases in which we have addressed the department's treatment of the cost of equity where rates are being set for services of a subsidiary wholly owned by a parent corporation. See, e.g., *Brockton Edison Co.* v. *Department of Pub. Utils.*, 379 Mass. 665, 669-671 (1980); *Massachusetts Elec. Co.* v. *Department of Pub. Utils., supra* at 300-302. We are not persuaded that these cases evidence a "clear principle of regulatory law" violated by the department's decision in the instant case.

We have upheld in prior decisions the department's decision not to use the cost of equity to a parent holding company as a proxy for that of a wholly owned subsidiary for which the service rates were being set. *Massachusetts Elec. Co.* v. *Department of Pub. Utils., supra* at 303. *Brockton Edison Co.* v. *Department of Pub. Utils., supra* at 670. In so doing, however, we did not establish a rule of law that where rates are being set for one service component of an integrated corporate structure, risk must be assessed, for the purpose of determining a return on equity, on the basis of investment risk understood in context of that specific portion of the corporation alone: "Data for companies comparable to a wholly owned subsidiary are particularly hard to find . . . . We have not wholly rejected the use of a parent as a surrogate for its subsidiary . . . ." *Brockton Edison Co.* v. *Department of Pub. Utils., supra* at 670. Rather, we determined only that in the cases before us the department's rejection of the proxy methodology for determining a wholly owned subsidiary's cost of equity was not violative of the standards contained in G. L. c. 30A, § 14 (7).

Moreover, even if we had established in the context of parent holding companies and wholly owned subsidiaries the suggested principle of law on which the Attorney General relies, it would only be analogous to the case at bar. Fitchburg is a single, integrated corporate entity with two financially

intertwined divisions; the gas service division is not a formal corporate subsidiary.

While the Attorney General's challenge to the department's methodology is reasonable, it does not demonstrate error of law. The Attorney General basically proposes only an alternative methodology to that employed by the department. But we have noted that "determination of the cost of equity is a matter of judgment, and that any method, assumption or conclusion may have shortcomings." *Brockton Edison Co.* v. *Department of Pub. Utils., supra* at 670. The Attorney General cites in his brief many agency decisions supportive of his proffered methodology.[3] We cannot say that these establish a principle of law which requires our reversal of the department's decision here. The department cites an equally large number of agency decisions supporting its position,[4] including its prior treatment of rate setting for Fitchburg. See, e.g., *Fitchburg Gas & Elec. Light Co.*, D.P.U. 19084 (August 31, 1977); *Fitchburg Gas & Elec. Light Co.*, D.P.U. 18297 (December 31, 1975); *Fitchburg Gas & Elec. Light Co.*, D.P.U. 18296 (December 31, 1975). This prior treatment of Fitchburg is consistent with the treatment before us and adds strength to the department's choice of method. *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 107 (1975). Where the result of employing a specific methodology in rate setting is not impermissible, the choice of the methodology is a matter committed to agency discretion and is beyond the scope of our review. *Attorney Gen.* v. *De-*

---

[3] See, e.g., *Tennessee Gas Pipeline Co.*, 25 F.E.R.C. ¶ 61,020, at 61,093-61,097 (1983); *Consolidated Gas Supply Corp.*, 24 F.E.R.C. ¶ 61,046, at 61,143-61,147 (1983); *Central Ill. Light Co.*, 10 F.E.R.C. ¶ 61,248, at 61,479 (1980); *Hampshire Gas Co.*, 6 F.E.R.C. ¶ 61,249, at 61,612-61,613 (1979); *Peoples Natural Gas Co.*, 44 P.U.R. 4th 62 (Iowa State Commerce Comm'n 1981); *Intermountain Gas Co.*, 86 P.U.R. 3d 438 (Idaho Pub. Utils. Comm'n 1970).

[4] See, e.g., *Sierra Pac. Power Co.*, 53 P.U.R. 4th 194 (Nev. Pub. Serv. Comm'n 1983); *New York State Elec. & Gas Corp.*, 44 P.U.R. 4th 449 (N.Y. Pub. Serv. Comm'n 1981); *San Diego Gas & Elec. Co.*, 31 P.U.R. 4th 435 (Cal. Pub. Utils. Comm'n 1979); *Connecticut Light & Power Co.*, 30 P.U.R. 4th 67 (Conn. Div. Pub. Utils. Control 1979); *Baltimore Gas & Elec. Co.*, 17 P.U.R. 4th 44 (Md. Pub. Serv. Comm'n 1976); *Madison Gas & Elec. Co.*, 17 P.U.R. 4th 109 (Wis. Pub. Serv. Comm'n 1976).

*partment of Pub. Utils.,* 390 Mass. 208, 228-229 (1983). Cf. *FPC* v. *Hope Natural Gas Co.,* 320 U.S. 591, 602 (1944); *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 360 Mass. 443, 453 (1971).

The Attorney General's argument that it was irrational for the department to calculate the return on Fitchburg's common equity based on Fitchburg's over-all financial condition has equally little merit. In basing its order on Fitchburg's entire financial position, the department relied on testimony presented by Fitchburg that investors and financial reporting services view Fitchburg as a financial whole for the purposes of determining equity investment risk. It concluded that "[i]f we were to ignore this reality by setting a separate return for gas operations, we would risk deviating from the required return toward a theoretical return devoid of practical relevance." We do not consider irrational the department's choice not to require Fitchburg to introduce evidence of the cost of equity to a hypothetical gas company comparable to Fitchburg's gas service operations alone. The department could have done so reasonably. Nevertheless, its choice not to do so was rational.

The Attorney General also argues that the record contained no substantial evidence that the risks attending Fitchburg's gas service operations were the same as those attending its electric service operations. We need not address this issue as its significance is premised upon our acceptance of the Attorney General's other arguments, which we reject.

2. *Capital Structure*

The Attorney General next challenges the department's inclusion of securities issued by Fitchburg during 1981 and 1982 in the capital structure used to compute the over-all allowable rate of return for the purpose of setting Fitchburg's gas service rates. According to the Attorney General, these securities were issued solely to finance Fitchburg's investment in the proposed nuclear powered electric generating facility in Seabrook, New Hampshire. He asserts that because this investment can only benefit Fitchburg's electric service consumers, the securities issued to finance the investment may not, as a matter of law, be included in the capital structure used to set Fitchburg's gas

service rates. The Attorney General also contends that the department provided an inadequate statement of findings and reasons for its rejection of his position. We agree with the Attorney General that on the record before us we are unable to determine whether the department erred, as a matter of law, in employing a capital structure for setting gas service rates which included the securities issued by Fitchburg during 1981 and 1982 and challenged by the Attorney General. The department has provided an inadequate statement of findings and reasons to allow us to conduct our appellate review of its order under G. L. c. 30A, § 14 (7). We therefore conclude that it is necessary to remand the case to the department for a further statement of subsidiary findings and reasons regarding the Attorney General's position.

"Limited though it may be, our review of petitions under G. L. c. 25, § 5, is not perfunctory." *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 533 (1984). To enable us to conduct our review adequately, the department must provide us with an adequate statement of findings and reasons supporting its decision. See *id.; Hamilton* v. *Department of Pub. Utils.*, 346 Mass. 130, 137 (1963); "Every agency decision shall be . . . accompanied by a statement of reasons for the decision . . ." G. L. c. 30A, § 11 (8). The Attorney General was an intervener in the action before the department and therefore the statement of reasons we require of the department is less than that required where the department is addressing the claim of a party making an affirmative proposal. See *supra* at note 2; *Trustees of Clark Univ.* v. *Department of Pub. Utils.*, 372 Mass. 331, 334 (1977). Nevertheless, the arguments made by the Attorney General during a proceeding in which he is entitled to intervene by statute, see G. L. c. 12, § 11E, may not be ignored by the department. We conclude that the department here inadequately treated in its statement of findings and reasons the Attorney General's argument that certain securities issued by Fitchburg should be excluded from Fitchburg's capital structure in establishing a rate of return to be used in setting gas service rates.

The department's treatment of the Attorney General's argument that certain securities issued by Fitchburg should not be included in Fitchburg's capital structure for the purpose of setting gas service rates consisted entirely of the following: "The Attorney General argues (Brief, pp. 43-44; Reply brief, pp. 22-23; letter dated January 25, 1983) that, if the securities issued in 1981 and 1982 are not excluded in determining Fitchburg's gas rates, then gas ratepayers will be forced to bear the capital costs of the Seabrook project. However, as we found above . . . this record does not support the division of Fitchburg's risk into electric and gas portions." The department here refers to and relies upon its treatment of the Attorney General's argument regarding the proper calculation of risk for determining a return on common equity applicable for setting gas rates, which is discussed and upheld above. In rejecting that argument, the department reasoned that separating Fitchburg's gas from its electric service operations for determining an independent gas service investment risk calculation was impractical because investors view Fitchburg as a whole. Accordingly, to determine a realistic cost of "hiring capital," the department concluded that an investment risk calculation based upon the financial position of Fitchburg as a whole should be employed.

This statement of reasons does not meet the Attorney General's position on the capital structure. As to this issue, he asserts that an adjustment of the capital structure should be undertaken which would alter the percentages of Fitchburg's total capital structure allocable to long term debt, preferred stock, and common equity by altering the values of these categories. Doing so, he urges, would then change the weighted cash flow calculations upon which the over-all rate of return for Fitchburg is based. He argues that this change would occur without altering the cost rate for common equity. The department failed to provide us with an adequate statement of findings and reasons for its decision to reject the Attorney General's argument that Fitchburg's capital structure should be modified for the purpose of setting gas rates in this case. While the Attorney General has the burden of proving error under G. L.

c. 25, § 5, the department must provide a statement of findings and reasons for its decision so that we can determine whether error has occurred.

The department and Fitchburg argue that the department's policy against attempting to trace the proceeds of a company's financing supports the department's decision. The Attorney General argues to the contrary. The department's order, however, in rejecting the Attorney General's argument that certain securities issued by Fitchburg must be excluded from Fitchburg's capital structure in setting gas service rates, contains no findings or reasons which address how the proceeds derived from the securities issued by Fitchburg in 1981 and 1982 were used. It does not state whether the department rejected the Attorney General's position on modifying Fitchburg's capital structure because the record does not support his allegations regarding how these proceeds were used. Nor does it indicate that the department invoked a policy against tracing such proceeds in dismissing the Attorney General's position. Accordingly, we do not address whether the department's decision could be upheld if the department had made findings consistent with the arguments it now advances. See 2 K.C. Davis, Administrative Law § 16.12 (1958). It seems that the department regards its decision concerning the determination of the cost of equity on the basis of the entire operation of Fitchburg as dispositive of the question of allocating senior securities based on the purpose for which those securities were issued. If this is its position the department should set forth its reasons for its conclusion.

Judgment shall enter in the county court affirming the department's decision in so far as it concerned the cost of equity, and remanding to the department for further findings and reasons on the argument of the Attorney General regarding the capital structure.

*So ordered.*