DSCI CORPORATION vs. DEPARTMENT OF TELECOMMUNICA-
TIONS AND ENERGY & another.[1]

Suffolk. April 5, 2007. - August 2, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Department of Telecommunications and Energy. Telecommunications. Telecom-
munications Act.*

In an appeal from a decision of the Department of Telecommunications and
Energy (department), this court concluded that the department did not err in
determining that a local telephone company that purchased telephone services
(plaintiff) from another telephone company could be restricted by that com-
pany from reselling those services at discounted prices to certain customers,
where the restrictions were not unreasonable or discriminatory [602-606],
and the plaintiff did not meet its burden to show that the department's con-
clusion was not based on substantial evidence [606-607]; this court remanded
the matter, however, for clarification and further action regarding the ap-
plicability of a corporate rewards discount to the Commonwealth's customer-
specific pricing contract [607-608].

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on May 19, 2006.

The case was reserved and reported by *Cordy*, J.

*Robert J. Munnelly, Jr.*, for the plaintiff.

*Thomas A. Barnico*, Assistant Attorney General, for the de-
fendant.

*Alexander W. Moore* for the intervener.

IRELAND, J. A single justice of this court reported, without
decision, this case involving an appeal, pursuant to G. L. c. 25,
§ 5, from a decision of the Department of Telecommunications
and Energy (department) that a local telephone company that
purchases telephone services from another telephone company
could be restricted from reselling those services at discounted

[1]Verizon New England, Inc., doing business as Verizon Massachusetts (Veri-
zon), intervener. A single justice of this court allowed Verizon's motion to in-
tervene.

prices to certain customers. Specifically, the appeal raises two issues: the validity of a restriction imposed by Verizon New England, Inc., doing business as Verizon Massachusetts (Verizon), an incumbent local exchange carrier (ILEC), on DSCI Corporation (DSCI), a competing local exchange carrier (CLEC), regarding *to whom* DSCI may resell certain telecommunications services provided by Verizon to the Commonwealth pursuant to Verizon's customer-specific pricing contract with the Commonwealth (Commonwealth CSP); and the availability of a corporate rewards discount that Verizon typically gives to its business customers, when DSCI resells the services provided under the Commonwealth CSP. The department concluded that Verizon's restriction on resale was not unreasonable or discriminatory, and that DSCI was not entitled to apply the corporate rewards discount. We affirm the department's decision so far as it concerns the resale of the services provided pursuant to the Commonwealth CSP and remand for clarification and further action the issue of the applicability of the corporate rewards discount.

1. *Statutory and regulatory overview.* "Until the 1990's, the provision of local telephone service was not competitive." *MCI WorldCom Communications, Inc.* v. *Department of Telecommunications & Energy*, 442 Mass. 103, 104 (2004). "Individual telephone companies, sometimes called 'incumbent local exchange carriers' (ILECs), maintained monopolies over defined geographic areas." *Id.*, citing *Global NAPs, Inc.* v. *New England Tel. & Tel. Co.*, 226 F. Supp. 2d 279, 285 (D. Mass. 2002). See 47 U.S.C. §§ 251(h), 252(j) (2000); *AT&T Communications of the S. States, Inc.* v. *BellSouth Telecommunications, Inc.*, 7 F. Supp. 2d 661, 664 (E.D.N.C. 1998) ("a local exchange carrier is an entity that has the infrastructure, or access to the infrastructure, necessary to route telephone calls to individual subscribers"). "In an effort to dispense with these monopolies and introduce competition into the market, Congress passed the Telecommunications Act of 1996 (Act), Pub. L. 104-104, 110 Stat. 56 (codified in part at 47 U.S.C. §§ 251-261 [2000])." *MCI WorldCom Communications, Inc.* v. *Department of Telecommunications & Energy*, *supra* at 104-105. CLECs are the competitors of ILECs. *Id.* at 105, citing 47 U.S.C. §§ 251(a), (c), & 252. The Federal Communications Commission (FCC) has

promulgated regulations and issued orders relative to the Act. 47 U.S.C. § 251(d)(1).

The Act imposes a duty on all ILECs, such as Verizon, to offer CLECs "at wholesale rates any telecommunications service that the carrier provides [to its subscribers] at retail." 47 U.S.C. § 251(c)(4)(A).[2] The FCC has stated that this resale duty "makes no exception for . . . contract and other customer-specific offerings," unless a restriction in such an offering is determined to be reasonable. *Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15499, 15970-15971, pars. 948 & 952 (1996).[3] *(Local Competition Order)*

In offering services for resale, an ILEC is not permitted to impose unreasonable or discriminatory conditions or limitations. 47 U.S.C. § 251(c)(4)(B). Moreover, "resale restrictions are presumptively unreasonable," and the ILEC that imposes a restriction bears the burden proving that it is reasonable and nondiscriminatory. *Local Competition Order, supra* at 15966, 15975, at pars. 939 & 964. See 47 C.F.R. § 51.613(b) (2006). The FCC regulations give State commissions, such as the department, authority to determine whether a condition imposed by an ILEC "is reasonable and nondiscriminatory." *Id.*[4] The question of reasonableness may be fact sensitive and vary lo-

[2]In its brief, the department explains that, when reselling its telecommunications service, the ILEC generally continues to provide the physical connection and telecommunication service to the customer, while the CLEC maintains the customer relationship and billing arrangements.

[3]In *Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15499 (1996) *(Local Competition Order),* the FCC adopted initial rules for States to apply in implementing § 251 of the Act, that is, to open the local exchange and exchange access markets to competition. *Id.* at 15507, 15509-15510, at pars. 6 & 13. The *Local Competition Order, supra* at 15509, at par. 12, states that the Act "contemplates three paths of entry into the local market — the construction of new networks, the use of unbundled elements of the [ILEC's] network, and resale." See *AT&T Communications of the S. States, Inc.* v. *BellSouth Telecommunications, Inc.,* 7 F. Supp. 2d 661, 664-665 (E.D.N.C. 1998) (detailing ways Act requires ILECs to give CLECs access to ILEC telecommunications services).

[4]Pursuant to §§ 251 and 252 of the Act, State commissions are granted limited authority over interstate service. The FCC has authority over intrastate services. See *Global NAPS, Inc.* v. *Verizon New England Inc.,* 327 F. Supp. 2d 290, 294 (D. Vt. 2004), aff'd, 454 F.3d 91 (2d Cir. 2006), citing *Pacific Bell* v. *Pac-West Telecommunications, Inc.,* 325 F.3d 1114, 1126 n.10 (9th Cir. 2003).

cally due to the practices of local ILEC's and local market conditions. *Local Competition Order, supra* at 15971, at par. 952.

The Act contains an exception to the resale duty of ILECs: "a State Commission may, consistent with [FCC] regulations . . . prohibit a reseller that obtains at wholesale rates a telecommunications service that is available at retail *only to a category of subscribers* from offering such service to a *different category of subscribers*" (emphasis added). 47 U.S.C. § 251(c)(4)(B).

2. *Background.* Some background information concerning Verizon's contract with the Commonwealth and the dispute that followed is helpful. The department states that customer specific pricing contracts, such as the one at issue here, are "customer-specific variations to a carrier's standard tariff offerings and are filed with the [d]epartment as part of CSP tariff filings."[5] Pursuant to the Commonwealth CSP contract, Verizon provides telecommunications services to certain State and local government and nonprofit agencies, called "eligible entities."[6] In addition, the Commonwealth CSP contract separately includes Verizon's "Customer 38" contract which grants, in essence, discounts on the monthly per-line charge or rate, with specific volume requirements. Verizon also offers a corporate rewards tariff to business customers, which provides an optional calling plan and various discounts such as usage on a per-line or per-minute basis, volume discounts, and loyalty discounts. The corporate

[5]"Tariffs are public documents setting forth the terms and conditions of the common carrier's services and rates." *AT&T Corp.* v. *Community Health Group*, 931 F. Supp. 719, 722 (S.D. Cal. 1995). The department requires a CSP tariff filing to include (1) a copy of the CSP contract; (2) a detailed description of services to be offered under the CSP contract; (3) a discussion of the competitive situation that prompted the need for the CSP contract; and (4) tariff language summarizing the major terms and conditions of the CSP contract. See G. L. c. 159, § 19. These requirements are imposed because, with respect to a CSP, an ILEC, such as Verizon, responds to a competitive retail marketplace situation by negotiating rates, terms, and conditions for a particular customer that are different from (and usually more favorable than) standard tariffed retail prices, terms, or conditions.

[6]The eligible entities are defined in the contract and include "all constitutional offices," the Legislature, judiciary, cities, towns, municipalities, counties, schools, authorities, commissions, institutions of higher education, quasi public agencies, and certain nonprofit entities currently contracting with the Commonwealth to provide human and social services, and "other eligible entities designated in writing by the State [p]urchasing [a]gency."

rewards document expressly states that its usage rates are not available to any CSP.

The dispute that gave rise to DSCI's complaint occurred when DSCI wanted to resell the telecommunications services contained in the Commonwealth CSP to DSCI's commercial customers. Verizon maintained that DSCI only could resell the services to the eligible entities listed in the Commonwealth CSP, arguing, in essence, that the Commonwealth CSP was unique and thus fell under the Act's different "category of subscribers" exception. 47 U.S.C. § 251(c)(4)(B). DSCI also argued that, even if it were limited to reselling to eligible entities under the Commonwealth CSP, it could apply Verizon's corporate rewards usage rates instead of the Customer 38 contract rates that are part of the Commonwealth CSP.

The parties submitted prefiled testimony, documents, and re-sponses to record requests to the department. The department then conducted a hearing where three witnesses testified, two from Verizon and one from DSCI.

In its written decision, the department concluded that Verizon met its burden of proving that the restriction on the resale of the Commonwealth CSP was reasonable and nondiscriminatory. It noted that Verizon did not seek to prevent DSCI from all resale of services under the Commonwealth CSP contract, but only precluded DSCI from reselling the services to any customer other than the hundreds of eligible entities listed in the Commonwealth contract. The department concluded that the "sheer size of an especially large customer," while not dispositive in the dispute, "can be a distinguishing factor in arriving at a judgment whether customers are 'similarly situated.' " The department also determined that the restriction is not unreasonable because no other entities are similarly situated to the eligible entities as the Commonwealth "is a unique customer and . . . the legal framework under which contracts between Verizon and the Com-monwealth are created" justify the restriction on resale. Citing G. L. c. 30B and 801 Code Mass. Regs. § 21.04 (2003), it explained:

"Pursuant to Massachusetts law and regulations, the Commonwealth is given the authority to delineate those

entities that are eligible to use Commonwealth-negotiated contracts. This authority . . . imposes unique requirements on Verizon, as a successful bidder for the Commonwealth's custom, that justify the creation of a subclass of commercial customers that are eligible to take the service under the contract. For example, the Commonwealth's legal authority to enter into contracts is contained in procurement statutes and regulations that are non-negotiable. . . . In addition, the Commonwealth requires the agreement of all carriers that seek to enter into CSP contracts with [it] to provide service to hundreds of entities that supply some service to the Commonwealth, and the list can, and likely does fluctuate over the duration of the contract . . . thus imposing a significant and uncommon contract management burden on the successful bidder. . . . Furthermore, the Commonwealth's standard contract terms and conditions prohibit termination liability [for the Commonwealth], likely a rarity among contracts with business customers in the telecommunications industry, and a provision that substantially alters the fundamentals of the contracting process." (Citations omitted.)

The department also rejected DSCI's claim that it may combine Commonwealth CSP contract per-line rates with corporate rewards usage rates even for customers conceded by Verizon as eligible.[7] The department determined that the restriction was reasonable and nondiscriminatory because the corporate rewards tariff specifically states that it is not available for use with CSP contracts.

3. *Discussion.*[8] a. *Standard of review.* Where, as here, a party

---

[7]The department stated: "Usage-based rates are variable local and toll charges based on measured (usually per-minute) or unlimited use; per-line rates are monthly fixed line charges assessed for access to the network notwithstanding the amount of use. Unless an end-user has a flat-rate calling plan, billing for services consists of a combination of usage and per-line charges."

[8]In its complaint, DSCI raised two other issues: (1) Verizon's process for consideration of CLEC's requests to resell CSPs; and (2) a request that the department impose penalties on Verizon for its behavior, including substantial delays and a lack of response to requests by DSCI, as well as a belated change of position concerning the restriction on the resale of the Commonwealth CSP to eligible entities. Neither issue was appealed from the order

seeks judicial review of the department's decision pursuant to G. L. c. 25, § 5:

> "Our standard of review . . . is well settled: a petition that raises no constitutional questions requires us to review the department's finding to determine only whether there is an error of law. . . . The burden of proof is on the appealing party to show that the order appealed from is invalid, and we have observed that this burden is heavy. . . . Moreover, we give deference to the department's expertise and experience in areas where the Legislature has delegated to it decision-making authority, pursuant to G. L. c. 30A, § 14. We shall uphold an agency's decision unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. G. L. c. 30A, § 14 (7)." (Citations omitted.)

*Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997).

Where a "case involves interpretation of a complex statutory and regulatory framework," and the relevant Federal regulatory authority has delegated to the department the determination at issue, we will accord deference to the department's interpretation of the relevant Federal statutes and regulations. *MCI Telecommunications Corp.* v. *Department of Telecommunications & Energy*, 435 Mass. 144, 150-151 (2001). Such deference is appropriate here because the FCC has declared that the "substance and specificity of rules concerning which discount and promotion restrictions may be applied to resellers . . . is a decision best left to [S]tate commissions, which are more familiar with the particular business practices of their incumbent LECs and local market conditions." *Local Competition Order, supra* at 15971, at par. 952. See *MCI Telecommunications Corp.* v. *Department of Telecommunications & Energy, supra* at 151.

b. *Resale of Commonwealth CSP.* DSCI contends that the department's conclusion that the restriction on the resale of the

---

of the department and this court will not address them. We also do not address DSCI's argument that the department failed to consider Verizon's behavior in deciding whether its restriction was reasonable and nondiscriminatory.

Commonwealth CSP to eligible entities is reasonable and non-discriminatory is legal error, arbitrary or capricious, and lacks record support.

First, DSCI argues that the department's analysis failed to apply the governing Federal standards, namely, that the restriction is presumptively *invalid* unless found to be *both* reasonable and nondiscriminatory.[9] There is no merit to this claim. The department's decision sets forth the applicable statutory and regulatory provisions, states that the burden was on Verizon to prove that its restrictions on the resale were reasonable and nondiscriminatory, and applies the relevant law in concluding that Verizon met its burden. We also reject DSCI's claim that the decision contains "almost no analysis" or evaluation of the statutory and regulatory framework concerning resale, local market conditions, or Verizon business practices. For each of the issues relevant to this appeal, the decision first presents the parties' respective arguments and then proceeds to an analysis section where the department explained its reasons for its conclusion that Verizon met its burden. Cf. *Boston Gas Co.* v. *Department of Telecommunications & Energy*, 436 Mass. 233, 239, 242-243 (2002) (vacating portion of department's order where no substantial evidence); *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, *supra* at 868-869 (department's decision inadequate where insufficient subsidiary findings and no explanation for decision to accept certain methodology); *U.S. W. Communications, Inc.* v. *Hix*, 183 F. Supp. 2d 1249, 1256-1257 (D. Colo. 2000) (utility commission's approval of resale restriction was error of law, where ILEC did not attempt to rebut presumption of unreasonableness and commission did not explain whether or how presumption was overcome). In addition, nothing in paragraph 952 of the *Local Competition Order* requires the department explicitly to discuss local market conditions or Verizon's business practices.

DSCI next claims that the department misapplied the Federal standards when it concluded that Verizon met its burden, because the department improperly focused on the uniqueness

---

[9]DSCI does not argue that the department (or Verizon) has erroneously set forth the governing law but, rather, that the department has wrongly applied that law.

of contracting with the Commonwealth. DSCI argues that, when comparing the end users of Verizon and DSCI, the department did not focus on quantity, time of use, manner and costs of service of DSCI's end users, and thus failed to identify a cost or other basis for differentiating Verizon and DSCI end users. DSCI relies in particular on a 2002 consultative opinion of the Florida Public Service Commission to support its assertion that Verizon's restriction on resale of the Commonwealth CSP is unreasonable and discriminatory "[a]bsent [evidence of] cost to serve or other quantifiable differences" to distinguish Verizon and DSCI end users.

The Florida consultative opinion is not persuasive. It is an assessment whether a local ILEC (BellSouth) complied with a checklist of requirements in § 271 of the Act.[10] Thus, the discussion about resale was only one of fourteen factors, cited in § 271, that the commission was assessing, and not the focal point of the opinion. See 47 U.S.C. § 271(c)(2)(B)(i)-(xiv). Indeed, no analogous resale restriction is discussed in the opinion. Moreover, the cost factors on which DSCI relies are what a witness for BellSouth told the commission that it used to determine whether an end user is similarly situated for purposes of eligibility for resale of services. DSCI has not pointed to any part of the consultative opinion where the commission even indorsed those factors, let alone declared them to be the sole basis

---

[10]Section 271 of the Act allows Bell operating companies "seeking to provide certain long-distance services [interLATA] [to] obtain permission from the FCC" if they demonstrate compliance with the checklist of requirements listed in § 271. *Earthlink, Inc.* v. *FCC*, 462 F.3d 1, 4 (D.C. Cir. 2006). InterLATA service is defined as "telecommunications between a point located in a local access and transport area and a point located outside such area." 47 U.S.C. § 153(21).

Long distance markets were forbidden to Bell operating companies "under the antitrust consent decree that broke up AT&T in the early 1980s." *Earthlink, Inc.* v. *FCC, supra.* The consent decree divided the former Bell territory into geographic units called LATAs. *United States* v. *Western Elec. Co.*, 569 F. Supp. 990, 993-994 (D.D.C. 1983). LATA is an acronym for "local access and transport area." 47 U.S.C. § 153(25).

DSCI also relies on *Matter of Application of Verizon New England Inc., & Others for Authorization to Provide In-Region InterLATA Sevices in Massachusetts*, 16 F.C.C.R. 8988 (2001), which is likewise an assessment whether Verizon met the requirement of § 271 of the Act to open its local exchange markets to competition in the Commonwealth.

for determining whether a resale restriction is reasonable and nondiscriminatory pursuant to 47 U.S.C. § 251(c)(4)(B). Most importantly, DSCI cites no statute, regulation, or other law that limits review of a resale restriction by State commissions like the department, to issues of costs.

DSCI also claims that even if the department did not have to take into account cost differences in its analysis of Verizon's restriction on resale, it erred in relying on the procurement process as the basis for determining whether the eligible entities were similarly situated to DSCI's business customers pursuant to 47 U.S.C. § 251(c)(4)(B). We disagree. It was not improper for the department to consider the procurement process, because different regulatory schemes may support different classifications, just as here, § 251(c)(4)(B) envisions different categories of subscribers. See *Barnes* v. *State Tax Comm'n*, 363 Mass. 589, 593-594 (1973) (rejecting claim of unequal treatment by tax commission where pawnbrokers licensed and regulated according to scheme different from other small loan agencies). The department also permissibly could credit the burden imposed on Verizon in carrying out the terms of the Commonwealth CSP contract, some of which are, by statute, nonnegotiable. See *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 523-524 (1998), cert. denied, 525 U.S. 1177 (1999). As the department stated, the Commonwealth has the sole authority to designate (and change) the eligible entities and may terminate the contract without liability, thus "alter[ing] the fundamentals of the contracting process."

DSCI also argues that the department's decision was not based on substantial evidence. Pursuant to G. L. c. 30A, § 1 (6), substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." In determining whether there is substantial evidence to support the department's decision "we must carefully consider any evidence in the record that detracts from the agency's conclusion, [and] 'accord due weight to the "experience, technical competence and specialized knowledge" of the department.' " *Boston Gas Co.* v. *Department of Telecommunications & Energy, supra* at 237, quoting *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 261 (1987). We do not substitute our views as long as the department's deter-

minations of fact are based on substantial evidence. *Andrews* v. *Civil Serv. Comm'n*, 446 Mass. 611, 617 (2006), quoting *Abramowitz* v. *Director of the Div. of Employment Sec.*, 390 Mass. 168, 173 (1983).

DSCI has not met its burden to show that the department's conclusion was not based on substantial evidence. *Boston Gas Co.* v. *Department of Telecommunications & Energy, supra*. The crux of DSCI's argument is that the department failed to consider "costs, terms of service or other quantifiable differences between Verizon [and DSCI] customers," which has been addressed above. In addition, we note that the department, in considering Verizon's claim that the Commonwealth CSP was unique, relied on the documentary evidence submitted to it and heard testimony from two Verizon employees concerning the nature of contracting with the Commonwealth. The department is entitled to assess the credibility of witnesses. *Andrews* v. *Civil Serv. Comm'n, supra* at 616.

c. *Applicable usage rates*. The department determined that, because of the plain language in Verizon's corporate rewards tariff, Verizon's prohibiting DSCI from combining the corporate rewards usage discount with the Commonwealth's CSP per-line rates was reasonable and nondiscriminatory. The department argues that this was a perfectly reasonable interpretation of this restriction because, by the terms of the corporate rewards program, Verizon itself could not combine the two discounts. Verizon also argues that the department was technically correct, given the understanding Verizon and the department had of DSCI's position at the time of the decision. However, DSCI argues, and now Verizon agrees, that DSCI may offer eligible entities either the corporate rewards usage rates or the Customer 38 contract usage rates, but not both.

A careful reading of the record does suggest that DSCI wanted to be able to offer only one of the usage discounts, not both, and that it presented this position to the department. It also is not entirely clear that the department understood this. DSCI asks that we issue a declaratory judgment that it has been entitled, from March 24, 2005, to the corporate rewards discount so that it may seek damages. We decline to do so. The department's order is less than clear on this issue, the record is not helpful, and the par-

ties asserted contradictory positions at oral argument. There are potential financial implications to the outcome of this issue for which a record needs to be developed. As Verizon and DSCI now seem to agree concerning the applicability of the usage discounts, and the department is charged with enforcing this complex regulatory scheme, we remand the matter to the department for clarification of the issue in dispute and to fashion any remedy it deems necessary.

4. *Conclusion.* For the reasons set forth above, we affirm the department's decision allowing Verizon's restriction on the resale of the Commonwealth CSP only to eligible entities. We remand the issue of usage rates to the department for further clarification and action.

*So ordered.*